## French v. Hanger

*Walter R. Faries*, for petitioner.
*H. Lester Haws*, contra.

KNIGHT, P. J., February 28, 1946.—This case is a product of the serious shortage of housing now exist-

ing. Counsel for defendant, in his brief, speaks of "sharp-shooting landlords", but our experience has been that in these times it is the tenants who do the sharp-shooting and who examine proceedings to obtain possession with close scrutiny, to find some technical defect in order to prolong their occupancy of the property they lease. This case is typical, for here the tenant admittedly has but a monthly lease, which can be terminated upon 30 days' notice.

On October 1, 1943, Biddle N. Hunt, agent for Fidelity-Philadelphia Trust Company, Trustee, leased to defendant by a written lease premises 431 Levering Mill Road, in Lower Merion Township, for the term of one year, from October 1, 1943, at the rental of $900 per annum. The lease provided that if neither party gave 30 days' written notice of an intention to terminate the lease at the expiration of the term, the agreement should continue for one month and so on from month to month until terminated by a 30-day written notice given by either party. The lease also provided, that in case of the sale of the property, the tenant would vacate upon 90 days' notice so to do.

Defendant moved into the house, and is still in possession thereof.

On September 28, 1945, the property was sold and conveyed to plaintiff, and the lease duly assigned to him. On September 29, 1945, the agent of plaintiff, sent to defendant the following notice:

"Settlement for 431 Levering Mill Road was held yesterday, and as agent for the new owner, Col. Frederic F. French, we hereby notify you that he is cancelling your lease according to the terms thereof, and expects possession of the house December 1, 1945."

On August 31, 1945, the rent director of the Philadelphia Defense Rental Area Office of Price Administration, issued a certificate relating to eviction, authorizing an action to remove or evict defendant as

tenant at the expiration of three months after the date. A copy of this certificate was sent to defendant and received by him.

On January 17, 1946, judgment was entered against defendant by virtue of the confession contained in the lease. No depositions have been taken, and the case is before us on petition and answer.

Defendant presses two reasons for opening the judgment: First, that the recapture clause in the lease requires 90 days' notice and only 62 days' notice was given. Second, receipt of rent after December 1, 1945, waived the notice to quit, which expired on that day.

We think there is no merit in the first reason. It is true that the declaration accompanying the confession of judgment, speaks of the recapture clause, but it also avers that defendant refuses to vacate notwithstanding the terms, covenants and conditions of the lease.

Likewise the notice to quit above quoted, notified the defendant that his lease was being canceled according to the terms thereof. One of the terms thereof was that the lease could be canceled by giving 30 days' written notice before the end of the term. Certainly the tenant cannot complain because he was given more than 30 days' notice, particularly in view of the fact that under the O. P. A. rules, no action could be commenced before December 1, 1945. Nor can defendant complain because plaintiff delayed from December 1st to January 17th in commencing his action. Defendant was not injured by this delay, in fact he benefitted by it, for he still refuses to vacate the property.

The recapture clause in the lease applied only to the first term of one year: it is not relevant at this time.

The second reason raises a more difficult question.

Plaintiff in his answer denies that he accepted any rent from defendant on December 1, 1945, or at any time thereafter.

In the absence of depositions, we would have to accept this denial in the answer as true. At the argument, however, counsel for plaintiff admitted that checks representing the amount of rent due for December and January had been received by plaintiff; these checks were unused by plaintiff, and were offered to counsel for defendant at the argument, and refused.

In the absence of any proof that a course of dealing existed between defendant and plaintiff, by which the rent was paid and received by check, we cannot say that the sending of a check was a proper tender of the rent.

It is well settled that, in the absence of an agreement to the contrary, a check of a debtor received for a debt, is merely conditional payment; that is, satisfaction of the debt if and when paid: Kilpatrick v. Home Bldg. & Loan Assn., 119 Pa. 30. Of course, if the creditor accepts the check, and intends to use it, there is a strict duty on him to present it for payment. Wendkos v. Scranton Life Ins. Co., 340 Pa. 550. Here plaintiff denies in his answer that he accepted the checks in payment of rent, and it is certain that he did not use them or try to collect them.

There may be considerable doubt if plaintiff was under any duty to return the checks; receipt does not necessarily mean acceptance. In this case there is a distinction to be drawn between the receipt of the check, and its acceptance as rent, for a check is not cash, it is not legal tender.

As to whether the acceptance of rent after the expiration date of a notice to quit, waives the notice and all rights under it, counsel for defendant has correctly stated the law as we understand it. In Pennsylvania the question of waiver is held to be one of intention, and if the facts are not in dispute the question is for the court and need not necessarily be sent to the jury.

We take judicial notice of the acute housing shortage, and there can be no doubt that plaintiff wanted, and wants, to occupy the house he purchased: he obtained permission to use legal means to get possession: he promptly gave notice to defendant to vacate. It is most improbable that he would do anything intentionally to waive that notice. He did not use the checks sent to him by defendant, nor did he attempt to collect them. This is rather persuasive evidence that he did not intend to waive his rights under the notice to quit.

In his brief, counsel for defendant implies that the checks were sent to the agent of plaintiff, but there is nothing in the record to show this. If the checks were drawn to the agent, it is significant that they reached plaintiff. If they had been accepted as rent, the agent in his usual course of business would have collected the money and remitted to plaintiff, less his commission.

We have examined the cases of Fitzpatrick v. Childs, 2 Brewster 365, and Biddle v. Cohen, 30 Dist. R. 160. Neither case holds that the receipt of the check was a payment of the rent. We think the gist of the decisions is that the checks were not accepted in payment of rent, and their return simply emphasized the intention of the landlord not to waive the notice to quit. Even if we were to assume that the checks represented so much money had and received, it does not necessarily follow that they represent rent, or were accepted as such. The lease provides that the tenant agrees to pay "any and all damages, costs and expenses which the landlord may suffer, or incur, by reason of any default of the tenant or failure to comply with the covenants of this lease." The tenant covenanted to vacate upon 30 days' notice so to do. This he did not do. In the absence of any proof that the checks were marked specifically for rent, we can assume that they were not so marked, in which event the creditor, landlord,

could apply them to costs, expenses and damages for detention of the property.

And now, February 28, 1946, the rule to show cause why the judgment should not be opened is discharged.